## IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
### CIVIL DIVISION -- LAW

| | |
|---|---|
| FRANK REIGHTLER<br>145 UNIONVILLE ROAD<br>JIM THORPE, PA 18229,<br>Plaintiff<br><br>v.<br><br>MONMOUTH BIOPRODUCTS, LLC,<br>a/d/b/a MONMOUTH BIOPRODUCTS, INC.<br>3 INDUSTRIAL COURT, SUITE 4<br>FREEHOLD, NJ 07728,<br>AND<br>SEAN M. DUDDY<br>28 BUTTONWOOD LANE<br>RUMSON, NJ 07760<br>Defendants | 2013 NOV 18 AM 11:07<br>No. 13-2360 CARBON COUNTY PROTHONOTARY<br>BY:_____<br>JURY TRIAL DEMANDED |

### NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Pennsylvania Lawyer Referral Service
Pennsylvania Bar Association
P.O. Box 186
Harrisburg, PA 17108
(800) 692-7375

_Richard P. Focht_
Richard P. Focht, Esquire
SCHOFFSTALL & FOCHT, P.C.
2987 Corporate Court, Suite 200
Orefield, PA 18069
(610) 706-0686

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA
CIVIL DIVISION – LAW

FRANK REIGHTLER
145 UNIONVILLE ROAD
JIM THORPE, PA 18229,
    Plaintiff

    v.

MONMOUTH BIOPRODUCTS, LLC,
a/d/b/a MONMOUTH BIOPRODUCTS, INC.
3 INDUSTRIAL COURT, SUITE 4
FREEHOLD, NJ 07728,
    AND
SEAN M. DUDDY
28 BUTTONWOOD LAND
RUMSON, NJ 0760
    Defendants

2013 NOV 18 AM 11:07

No. 13-2396 CARBON COUNTY PROTHONOTARY

BY:_____

JURY TRIAL DEMANDED

## COMPLAINT

### I. THE PARTIES

1. Plaintiff, Frank Reightler ("Reightler") is an adult individual who resides at 145 Unionville Road, Jim Thorpe, Carbon County, Pennsylvania 18229.

2. Defendant, Monmouth BioProducts, LLC a/d/b/a Monmouth BioProducts, Inc., ("Monmouth BioProducts") is a New Jersey business entity having a place of business at 3 Industrial Court, Suite 4, Freehold, New Jersey 07728. (Upon information and belief, said entity is registered and does business as Monmouth BioProducts, LLC, but also does business as Monmouth BioProducts, Inc.)

3. Sean M. Duddy, ("Duddy") is an adult individual residing at 28 Buttonwood Lane, Rumson, NJ 07760.

### II. JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in the Court of Common Pleas of Carbon County because at all relevant times (i) the Defendants regularly conducted

business in Pennsylvania and in Carbon County, Pennsylvania in particular, (ii) Carbon County is where the cause of action arose and (iii) Carbon County is the County in which either a transaction arose or an occurrence took place out of which the cause of action arose. Further, at all relevant times, Reightler resided in and worked out of his home/office for Monmouth BioProducts, which it considered to be a regional office, said home/office being located in Carbon County, Pennsylvania.

### III. AVERMENTS OF FACT COMMON TO ALL CLAIMS

5.  Upon information and belief, Duddy is the principal and/or controlling owner or member of Monmouth BioProducts.

6.  On or about October 15, 2005, Duddy, acting in his individual capacity, and on behalf of Monmouth BioProducts, entered into a written contract of employment ("contract") with Reightler by which Reightler was to perform certain sales work on behalf of Monmouth BioProducts for agreed upon compensation. A copy of the said employment contract is attached hereto as Exhibit A and incorporated herein by reference as though fully set forth at length.

7.  Thereafter, until October 7, 2013, when Reightler resigned from his position of employment with Monmouth BioProducts, Reightler diligently and dutifully performed his employment sales responsibilities under the contract with Monmouth BioProducts to its benefit, the terms of which remained essentially the same during said time frame, except for orally agreed upon adjustments to Reightler's compensation from time to time.

8.  The compensation Reightler was entitled to in various forms as an employee of Monmouth BioProducts under the contract was to be paid or otherwise received by Reightler according to the terms of the contract with the exception that

3

salary payments, in practice, were to be made, and in some instances were in fact made, twice per month on the 15th and 30th of each month at the stated rate of payment set forth in the contract.

9. At present, the following forms and amounts of compensation remain due, owing and unpaid to Reightler:

(i) Salary: $1,400.00 due as of October 15, 2013. Reightler's resignation from employment was effective October 7, 2013. Accordingly, he was employed by Monmouth BioProducts for the first 6 out of 15 days (40%) of the first 15 day pay period for October, 2013 for which he was not compensated.

(ii) Reimbursement for September, 2013 expenses: $4,238.46

(iii) Accumulated bonus/commissions for the following years:

a. 2011 - $29,041.33

b. 2012 - Approximately $40,700.00 (Defendants have acknowledged this is the approximate amount due but have not provided to Reightler the 2012 statements necessary to accurately and fully calculate the commissions owed with specificity).

c. 2013 - Approximately $31,000.00 (again, Defendants have not provided the 2013 statements necessary to accurately and fully calculate the commissions owed with specificity).

Approximate total: $100,000.00.

(iv) 30,000 shares (3% equity shares) of Monmouth BioProducts stock -- (value unknown) based on paragraph 7 of the employment contract for cumulative sales by Reightler in behalf of Monmouth BioProducts. (During Reightler's term of employment, his estimated sales for Monmouth BioProducts were $2,600,000.00. Reightler received

4

two (2) stock certificates to date, one in September, 2011 and one in January, 2012, each in the amount of 10,000 shares, each representing stock equal to 1% of the company so that 30,000 shares are still due and owing).

10. Defendants have acknowledged to Reightler, both orally and in writing, the fact that the aforesaid forms of compensation are past due and owing to Reightler, but payment has not been forthcoming as promised.

## COUNT I - BREACH OF CONTRACT –
## PLAINTIFF V. DEFENDANT, (MONMOUTH BIOPRODUCTS, LLC, a/d/b/a MONMOUTH BIOPRODUCTS, INC.)

11. The allegations set forth in paragraphs 1 through 10 above of this Complaint are incorporated herein by reference as though fully set forth at length.

12. Under the contract, Monmouth BioProducts had a duty to compensate Reightler for employment services rendered, in particular, for the years 2011, 2012 and 2013 while he was employed by Monmouth BioProducts.

13. Monmouth BioProducts' failure to fulfill its contractual duty of compensating Reightler according to the terms of the contract for employment services rendered constitutes a material breach of the contract.

14. As a direct and approximate result of Monmouth BioProducts' breach of contract as aforesaid, Reightler has suffered and sustained damages and losses in an amount believed to be in excess of $100,000.00.

15. As alleged previously, Reightler has made numerous demands on Monmouth BioProducts to provide him with the compensation he is entitled to under the contract as described aforesaid, yet Monmouth BioProducts has failed and refused to do so.

WHEREFORE, Plaintiff, Frank Reightler, demands entry of judgment in his favor and against Defendant, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. for compensatory damages in an amount in excess of $100,000.00, pre-judgment and post-judgment interest plus costs of suit.

### COUNT II - VIOLATIONS OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### 43 P.S. § 260.1 et seq.

### (Plaintiff v. Defendant, Monmouth BioProducts, LLC, a/d/b/a Monmouth Bio Products, Inc.)

16. The allegations set forth in paragraphs 1 through 15 above of this Complaint are incorporated herein by reference as though fully set forth at length.

17. Defendant, Monmouth BioProducts is an "employer" as defined in Pennsylvania's Wage Payment and Collection Law (hereinafter "WPCL"), 43 P.S. § 260.2a.

18. Under the WPCL, as construed by appellate case law, Reightler is a Pennsylvania employee protected by WPCL in part because he resided in Pennsylvania at all relevant times and worked from his home office in furtherance of Monmouth BioProducts' interests and in the performance of his duties for his employer, which benefited by Reightler performing his duties for Monmouth BioProducts in various counties in the Commonwealth of Pennsylvania and in other locations.

19. Aside from reimbursement of expenses, the other forms of compensation due and owing by Monmouth BioProducts to Reightler under the contract as described aforesaid including unpaid salary, unpaid bonus commission payments and stock options that were due to be granted but were not received, all of which constitute "wages" under the WPCL. 43 P.S. § 2602a.

20. The wages due to Reightler as described above were not paid in a timely manner under the contract and pursuant to the WPCL. 43 P.S. § 260.3.

21. Under the WPCL, Reightler is entitled to institute this action to seek and recover unpaid wages due and owing to him along with attorneys fees and liquidated damages. 43 P.S. § 260.9a and § 260.10.

WHEREFORE, Plaintiff, Frank Reightler, demands entry of judgment in his favor and against Defendant, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. for compensatory damages in an amount in excess of $100,000.00, pre-judgment and post-judgment interest, attorney fees, costs of suit and liquidated damages in an amount equal to 25% of the total amount of wages due.

## COUNT III - VIOLATIONS OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### 43 P.S. § 260.1 et seq.

### (Plaintiff v. Defendant, Sean Duddy)

22. The allegations set forth in paragraphs 1 through 21 above of this Complaint are incorporated herein by reference as though fully set forth at length.

23. In addition to the aforesaid allegations, Duddy is also an "employer" under the WPCL since at all relevant times he exercised policy making functions and decision making functions for Monmouth BioProducts and served in an active role in said entity's decision making processes, in particular with respect to the withholding and non-payment in a timely manner of the "wages" due and owing to Reightler.

WHEREFORE, Plaintiff, Frank Reightler, demands entry of judgment in his favor and against Defendant, Sean Duddy for compensatory damages in an amount in excess of $100,000.00, pre-judgment and post-judgment interest, attorney fees, costs of suit and liquidated damages in an amount equal to 25% of the total amount of wages due.

7

## COUNT IV - UNJUST ENRICHMENT

### (Plaintiff v. Defendant, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc.)

24. The allegations set forth in paragraphs 1 through 23 above of this Complaint are incorporated herein by reference as though fully set forth at length.

25. Should the Court determine that there was not a contractual relationship as alleged by Reightler between him and Monmouth BioProducts, Reightler asserts that there was a quasi contractual relationship/contract implied in law between the parties under which Monmouth BioProducts is liable to Reightler for the value of his services performed and reimbursement of expenses as previously alleged in an amount in excess of $100,000.00.

26. The total monetary relief claimed represents the fair market value of Reightler's employment related services at the time the services were rendered and those services conferred a significant monetary benefit upon Monmouth BioProducts during the applicable time period.

27. If Monmouth BioProducts is not required to pay to Reightler the aforesaid reasonable value of his employment related services, Monmouth BioProducts will be unjustly enriched at Reightler's expense since it accepted the benefit of his services with knowledge and acquiescence over the relevant time period of employment referenced previously from October 15, 2005 through October 6, 2013.

28. Under the aforesaid circumstances, Monmouth BioProducts was reasonably notified that Reightler, in providing what he perceived to be employment related services to Monmouth BioProducts was expecting to and is entitled to be paid by Monmouth BioProducts, and it would be inequitable for Monmouth BioProducts to retain the benefit of

8

the services performed by Reightler without paying him the reasonable value of said services.

WHEREFORE, Plaintiff, Frank Reightler, respectfully requests that judgment be entered against Defendant, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. for the reasonable value of employment related services he provided to Defendant in an amount in excess of $100,000.00, plus court costs, pre-judgment interest and post-judgment interest.

## COUNT V – FRAUD (MATERIAL MISREPRESENTATION)

### (Plaintiff, v. Defendants, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. and Sean M. Duddy)

29. The allegations set forth in paragraphs 1 through 28 above of this Complaint are incorporated herein by reference as though fully set forth at length.

30. Should the Court determine that there was not an employment contractual relationship between the parties based on an oral express or implied contract, Reightler alleges that Defendant, Sean M. Duddy, acting on his own behalf and on behalf of Monmouth BioProducts, knowingly and purposely made material misrepresentations to Reightler, in order to induce him to invest years of his time in the performance of employment related sales services for said Defendants, those material representations including, but not necessarily being limited to, the following:

(a) Representing that Monmouth BioProducts would pay to Reightler bonuses in the form of commissions on a quarterly basis in percentages and regarding certain products as set forth in a letter from Monmouth BioProducts to Reightler dated March 8, 2005, which became the contract when the said parties executed it on October 15, 2005, when in fact said Defendants never had any intention of fully paying those monies at all, let alone in a timely fashion, since bonuses and commissions were only in

9

part paid for 2011 and not at all for 2012-2013, despite numerous requests for payment and or statements by Reightler to Defendants so that Reightler could calculate the commissions due and owing to him;

(b)  Representing that Reightler would be granted and receive shares of stock equal to 1% of the company for each $500,00.00 in sales achieved, yet said grants of stock were not made for the last few years, despite requests, so that it became apparent that Defendants had no intention of honoring said commitment and instead made said promises to Reightler, and intended to do so, to induce Reightler into performing valuable services for Monmouth BioProducts without any hope of fully being compensated as promised.

31.  Reightler believes and avers that Defendant Duddy concocted this scheme in his own behalf and in behalf of Monmouth BioProducts because he wanted to advance his own financial interests and those of Monmouth BioProducts, but did not have the technical skills expertise and sales experience to do so on his own, so instead, he made fraudulent misrepresentations to Reightler to induce him to invest his time and energy to perform sales work for Monmouth BioProducts, intending all along to not fully compensate Reightler as promised.

32.  Reightler reasonably and justifiably relied on the knowingly false material representations and inducements made by Duddy as described above and devoted his substantial energy into the sales of Monmouth BioProducts materials and the growth of the company without receiving the promised compensation in the form of bonuses (commissions) and stock shares.

33.  Based on the foregoing, both Defendants are liable and indebted to Reightler for an amount in excess of $100,000.00 representing his lost investment,

10

unpaid salary including bonuses/commissions and other financial detrimental effects resulting from the fraudulent misrepresentations of both Defendants, plus punitive damages to deter said Defendants and other potential defendants from engaging in similar outrageous conduct.

WHEREFORE, Plaintiff, Frank Reightler, demands entry of judgment in his favor and against Defendants Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. and Sean M. Duddy for compensatory damages in an amount in excess of $100,000.00 as well as punitive damages and pre-judgment and post-judgment interest and costs of suit along with reasonable attorney fees.

## COUNT VI – BREACH OF FIDUCIARY DUTY

### (Plaintiff v. Defendants, Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. and Sean M. Duddy)

34. The allegations set forth in paragraphs 1 through 33 above of this Complaint are incorporated herein by reference as though fully set forth at length.

35. As the majority, if not sole, principal and/or member of Monmouth BioProducts, Duddy owed to Reightler a contractual duty to act at all times in the best interests of Monmouth BioProducts.

36. Specifically, as such, Duddy and the corporate Defendant both owed to Reightler a duty to grant to him shares of stock equal to 1% of the company as promised in paragraph 7 of the contract, yet both Defendants failed to timely fulfill said fiduciary duty to Reightler's detriment.

37. Based on the foregoing, Defendants are liable and indebted to Reightler for breach of fiduciary duty, and in connection therewith, Reightler asserts a claim for the granting of actual shares or monetary damages, specifically, 30,000 shares or the value of 30,000 shares of stock equal to 3% of the company for sales achieved in excess of

$1,500,000.00 for Monmouth BioProducts for which he was not yet granted shares or the value thereof.

WHEREFORE, Plaintiff, Frank Reightler, demands entry of judgment in his favor against Defendants Monmouth BioProducts, LLC, a/d/b/a Monmouth BioProducts, Inc. and Sean M. Duddy, jointly and severally, and demands that said Defendants grant to him 30,000 shares of the corporate defendant or compensatory damages in an amount representing the fair market value of said shares plus pre-judgment interest and post-judgment interest and costs of suit.

Respectfully submitted,

Richard P. Focht, Esquire
SCHOFFSTALL & FOCHT, P.C.
2987 Corporate Court, Suite 200
Orefield, PA 18069
(610) 706-0686
Attorney I.D. 44098
Attorney for Frank Reightler

## VERIFICATION

I verify that the statements made in this document are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date 11/12/13

Frank Reightler

# Monmouth BioProducts, LLC

March 8th, 2005

Mr. Frank Rieghtler
2619 Unionville Rd
Jim Thorpe PA 18229

Subject: Monmouth BioProducts employment offer:

Dear Frank,

We are prepared to offer you the following:

1) **Salary**            $7000.00 per month

2) **Medical**           covered by Carol Rieghtler

3) **401K**              50% matching up to 5000 dollars. Subject to revision as the business grows. Requires 6 months of employment before implemented.

4) **An automobile**     lease payment, insurance & maintenance

5) **Expenses**          all travel and office expenses paid each month.

6) **Bonus**             Paid quarterly. 5% on the first $5.00 per pound of dry, ready to use product, sold and 20% on the amount over $5.00. 5% on the fist $6.50 of liquid, ready to use, product and 20% for an amount over $6.50. Concentrates and specialty products shall be negotiated on a case-by-case basis depending on each products margin. The baseline numbers are subject to annul cost-of-living increases.

7) **Equity**            For each 500,000 dollars in sales I will grant you shares of stock equal to 1% of the company. You must stay with the firm one an additional year, from the time the shares are given, for the shares to vest.

8) **Office equipment** Monmouth BioProducts will provide you with a laptop computer & a cellular telephone, and a fax machine if necessary.

918 Route 33 • Suite 3 • Freehold, New Jersey 07728
Toll Free: (800) 692-5307 • Tel: (732) 863-0300 • Fax: (732) 863-0534

EXHIBIT A

9) Term Contract will run for a term of one year, and if sales credited to Mr. Reightler exceed 3X his base salary( 250,000) the contract automatically renews for an additional year. If this level of sales is not met than either side may choose to terminate the contract.

Frank, I hope you can accept these terms. One concern, which I have not addressed, is what happens in the event I am killed. I think we can fix that by putting a life insurance policy on me with you and other key employees as the beneficiaries. I think in the event of my untimely death, the policy would pay a benefit to the key people equal to one year of their base salary. This should allay some of the risk assumed by taking a job with such a small company.

Sincerely,

Sean M. Duddy
Principal


Accepeted by_____ Date_____
    Frank Reightler

**Monmouth BioProducts LLC**

By _[signature]_ Date _10-15-05_
 Sean M., Duddy/Principal

9) Term Contract will run for a term of one year, and if sales credited to Mr. Reightler exceed 3X his base salary( 250,000) the contract automatically renews for an additional year. If this level of sales is not met than either side may choose to terminate the contract.

Frank, I hope you can accept these terms. One concern, which I have not addressed, is what happens in the event I am killed. I think we can fix that by putting a life insurance policy on me with you and other key employees as the beneficiaries. I think in the event of my untimely death, the policy would pay a benefit to the key people equal to one year of their base salary. This should allay some of the risk assumed by taking a job with such a small company.

Sincerely,

Sean M. Duddy
Principal

Accepted by _____ Date 10/15/05
Frank Reightler

Monmouth BioProducts LLC

By_____ Date_____
Sean M., Duddy/Principal